UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DERRICK SPANN,

Plaintiff,

-against-

CAPTAIN ROMANA,

Defendant.

26-CV-5483 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LOUIS L. STANTON, United States District Judge:

Plaintiff Derrick Spann, who is currently incarcerated at Groveland Correctional Facility, filed this action *pro se* while he was incarcerated at West Facility on Rikers Island as a convicted prisoner. Plaintiff asserts that Defendant Captain Romana violated his federal constitutional rights at the Eric M. Taylor Center ("EMTC"), another facility on Rikers Island. The Court understands Plaintiff's complaint as asserting claims under 42 U.S.C. § 1983 for an unconstitutional strip search. By order dated July 7, 2026, the court granted Plaintiff's application to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint.

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court

must also dismiss a complaint if it lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obligated to construe pro se pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in pro se cases is limited. *Id*. at 475 (citation omitted). To state a claim, *pro se* pleadings must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible, not merely possible, that the pleader is entitled to relief. *Id*. at 679.

## BACKGROUND

The following facts are drawn from the complaint.[1] On June 10, 2026, at EMTC, correction officers told Plaintiff that he must be searched before being transferred to a different facility on Rikers Island. Plaintiff first went through a body scanner in the intake area in the presence of two officers. The complaint suggests that Defendant Captain Romana was one of the two officers. The officer accompanying Captain Romana asked Plaintiff if he had been shot before, and Plaintiff replied that he had, and that the bullet fragment is still lodged in his "right upper thigh." (ECF 1, at 4.) The officer then whispered to Defendant Romana,[2] but Plaintiff does not indicate in the complaint what the officer whispered. Defendant took off his body camera, "slammed the door," and told the Plaintiff to "give it to [him]." (*Id.*) Plaintiff said he did not have any contraband. In response, Defendant told him, "it's in your dick area." (*Id*.) Plaintiff again said that he did not have anything. Defendant threatened to spray Plaintiff with a chemical agent, and Plaintiff continued to insist that he did not have any contraband.

Defendant brought Plaintiff back to the search room and directed him to remove his shorts and boxers. Defendant then pulled out his pepper spray and said, "show me your dick[,] lift your balls[,] give it to me or I'm going to spray you." (*Id*. at 5.) Defendant further directed Plaintiff to "pull the skin back on [his] dick." (*Id*.) Although Plaintiff repeatedly told Defendant that he did not have anything, Defendant continued to threaten him. Plaintiff was "in the corner scared" and naked while Defendant threatened him. (*Id.*)

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

[2] In the complaint, Plaintiff refers to "the captain," which the Court understands to be a reference to Defendant Romana.

Plaintiff seeks money damages and an order directing that Defendant and the other officer "be removed from their duties." (*Id.*)

## DISCUSSION

### A. Claims under the Fourth Amendment

The Court understands Plaintiff to be asserting claims, under 42 U.S.C. § 1983, that Defendant violated his rights under the Fourth Amendment. The Fourth Amendment provides that people have a right "to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson v. Palmer*, 468 U.S. 517, 626 (1984), and "[t]here is a long-established principle that the routine, random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment," *Vann v. Griffin*, No. 16-CV-9903 (VB), 2018 WL 6199860, at *4 (S.D.N.Y. Nov. 28, 2018) (quoting *Vaughn v. Strickland*, No. 12-CV-2696 (JPO), 2013 WL 3481413, at *4 (S.D.N.Y. July 11, 2013) (internal quotation marks omitted)). The Second Circuit has nonetheless held, however, that "inmates do retain a limited right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (reaffirming *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992) ("[M]aintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy.")).

When evaluating a prisoner or detainee's claim that an officer violated his or her limited right to bodily privacy, the "court must [first] determine whether the inmate has 'exhibit[ed] an actual, subjective expectation of bodily privacy.'" *Id.* (quoting *Covino*, 967 F.2d at 77). Second, "the court must determine 'whether the prison officials had sufficient justification to intrude on [the individual's] [F]ourth [A]mendment rights.'" *Id.* (quoting *Covino*, 967 F.2d at 78).

With respect to the second question, where the claim challenges an "isolated search," rather than a regulation or policy, "courts typically apply the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979)." *Id*. at 58. *Bell* sets out a four-factor "test of reasonableness," which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider [1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." *Bell*, 441 U.S. at 559.

The first factor—the scope of the intrusion—varies with the type of search:

> A "strip search," though an umbrella term[,] generally refers to an inspection of naked individuals without any scrutiny of the subject's body cavities. A "visual body cavity search" extends to visual inspection of the anal and genital areas. A "manual body cavity search" includes some degree of touching or probing of body cavities.

*Cookish v. Powell*, 945 F.2d 441, 444 n.5 (1st Cir. 1991) (internal quotations and citation omitted). A visual body cavity search is generally considered invasive. *See Harris*, 818 F.2d at 58-59. The scope of the intrusion will also vary depending on who searches whom—*e.g.*, whether the officer conducting the search was of the same gender as the individual being searched. *See id.* at 59 ("[I]t is generally considered a greater invasion to have one's naked body viewed by a member of the opposite sex." (internal quotation marks and citation omitted)).

With respect to the second factor—the manner in which the search was conducted—the Supreme Court has held that "searches must be conducted in a reasonable manner." *Bell*, 441 U.S. at 560. For example, "[a] strip search conducted in a professional manner is more reasonable than one that is not." *Harris*, 818 F.3d at 59-60. Courts, however, have found that verbal threats alone do not make a search unreasonable. *See, e.g.*, *Jenkins v. City of New York*, No. 18-CV-7024 (LDH) (LB), 2020 WL 6700087, at *3 (E.D.N.Y. Nov. 12, 2020) ("While

'indefensible and unprofessional,' allegations of verbal threats and verbal abuse are not sufficient to transform an otherwise lawful strip search into one proscribed by the Constitution." (quoting *Jermosen v. Coughlin,* 878 F. Supp. 444, 449 (N.D.N.Y. 1995)).

As to the third factor—the justification for the search—"Supreme Court precedent suggests that officers must provide a justification that is supported by record evidence." *Harris*, 818 F.3d at 60. In particular, "whether an officer is searching for contraband is highly relevant to the reasonableness inquiry." *Id*.

Finally, with respect to the place where the search is conducted, "a strip search or body cavity search conducted in the presence of unnecessary spectators is less reasonable than one conducted in the presence of only those individuals needed to conduct the search." *Id.* at 62.

Here, Plaintiff's limited right to bodily privacy was not violated. First, in determining the first element of the analysis—whether Plaintiff exhibited a subjective expectation of bodily privacy–given the nature of the search and Plaintiff's reaction to it, the Court assumes, for the purposes of this order, that Plaintiff exhibited a subjective expectation of bodily privacy.

The facts as pleaded, however, do not suggest that Defendant lacked sufficient justification for the intrusion. First, although Plaintiff was subjected to a visual body cavity search, which is generally considered invasive, *Harris*, 818 F.2d at 58-59, the invasion of privacy was not as great because the search was conducted by a male officer rather than a female officer. *See id*. at 59. Even if the search was conducted by a female officer, "generally, the strip search of a male inmate in view of a female correction officer does not, by itself, rise to the level of a constitutional violation." *Holland v. City of New York*, 197 F. Supp. 3d 529, 543 (S.D.N.Y. 2016).

With respect to the second factor—the manner in which the search was conducted—the complaint does not suggest the manner in which the search was conducted was unreasonable. While it may have been unprofessional for Defendant to threaten to pepper spray Plaintiff while conducting the visual cavity search, verbal threats alone do not make a search unreasonable. *See Jenkins*, WL 6700087, at *3.

Third, Plaintiff does not allege facts suggesting that the initiation of the search was unjustified. Rather, correction officers had a legitimate penological purpose in searching Plaintiff before he was transferred to a different facility. Furthermore, Plaintiff alleges that, prior to being strip searched, he was first sent through a body scanner, which detected possible contraband on or in Plaintiff's person. It was only after the body scanner identified possible contraband that Plaintiff was subjected to a strip search. Moreover, the intrusive nature of the search appears to have been justified based on the location of the potential contraband on Plaintiff's upper thigh, in the vicinity of Plaintiff's genital area.

Finally, with respect to the place in which the search was conducted, Plaintiff alleges that it was conducted in a designated search room and there is no indication that the search was conducted in the presence of unnecessary spectators.

In sum, Plaintiff does not allege facts indicating there was a violation of his Fourth Amendment rights. The Court therefore dismisses Plaintiff's Fourth Amendment claims against Captain Romana for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. Claims under state law**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and

only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**LEAVE TO AMEND GRANTED**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid Section 1983 claim against Captain Romana, the Court grants Plaintiff 30 days' leave to amend his complaint to address the deficiencies identified above. If Plaintiff repleads his claims, he should allege facts showing that the search amounted to an unreasonable invasion of his privacy by addressing the standard set forth above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses the complaint for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated: August 11, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.